1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   STEVEN M. ARKOW (Cal. Bar No. 143755)
4  Assistant United States Attorney
   Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-6975
7       Facsimile: (213) 894-6269
        E-mail:    steven.arkow@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

```
                                FILED
                        CLERK, U.S. DISTRICT COURT

                        5/3/2023

                        CENTRAL DISTRICT OF CALIFORNIA
                        BY:_____JB_____ DEPUTY
```

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR   2:23-cr-00213-MEMF

13             Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                       YOSSI ENGEL
14             v.

15  YOSSI ENGEL,

16             Defendant.

17

18

19       1.    This constitutes the plea agreement between defendant YOSSI

20  ENGEL ("defendant") and the United States Attorney's Office for the

21  Central District of California (the "USAO") in the investigation of

22  defendant's solicitation of funds in connection with iWitness Tech

23  and real estate development in Israel.  This agreement is limited to

24  the USAO and cannot bind any other federal, state, local, or foreign

25  prosecuting, enforcement, administrative, or regulatory authorities.

26                     DEFENDANT'S OBLIGATIONS

27       2.    Defendant agrees to:

28             a.    Give up the right to indictment by a grand jury and,

                                     1

at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit "A" or a substantially similar form, which charges defendant with wire fraud, in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of

3

the crime charged in the single-count information, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true:

    a.   Defendant knowingly devised or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

    b.   The statements made or facts omitted as a part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing a person to part with money or property;

    c.   Defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

    d.   Defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

### PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty and agrees to make such restitution.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons

4

other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim for any losses suffered by that victim as a result of any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty. Defendant currently believes that the applicable amount of restitution is within the range of at least $3.5-$9.5 million although recognizes the amount may extend to within the range of $9.5-$25 million. The government currently believes that the applicable amount of restitution is approximately $11,366,281, and defendant reserves the right to contest that amount. The parties recognize and agree that the amount of restitution could change based on facts that come to the attention of the parties prior to sentencing.

7. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

Defendant understands that once the Court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

10. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant

6

and the USAO agree to the statement of facts attached as Exhibit "B" and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

11.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense<br>Characteristics | | |
| Loss (see below) | | U.S.S.G. § 2B1.1(b)(1) |
| Loss Involved 10 or more<br>Victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |

7

Acceptance of Responsibility    −3      U.S.S.G. § 3E1.1(a), (b)

The parties further agree that defendant's offense caused losses and that an adjustment under U.S.S.G. § 2B1.1(b)(1) applies. Defendant agrees that the loss is at least $3.5 million, corresponding to an adjustment of 18 levels under U.S.S.G. § 2B1.1(b)(1)(J), resulting in a total offense level of 24.  The government reserves the right to argue for −− and defendant reserves the right to contest −− that the loss is within the range of $9.5 million to $25 million, corresponding to an adjustment of 20 levels under U.S.S.G. § 2B1.1(b)(1)(K), resulting in a total offense level of 26.

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 4(c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to this paragraph, and subject to paragraph 24 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the

1  USAO would be free to seek the enhancement set forth in that section

2  and to argue that defendant is not entitled to a downward adjustment

3  for acceptance of responsibility under U.S.S.G. § 3E1.1.

4     13.  Defendant understands that there is no agreement as to

5  defendant's criminal history or criminal history category.

6     14.  Defendant and the USAO reserve the right to make additional

7  arguments for a sentence outside the sentencing range established by

8  the Sentencing Guidelines based on the factors set forth in 18 U.S.C.

9  § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

10                    WAIVER OF CONSTITUTIONAL RIGHTS

11     15.  Defendant understands that by pleading guilty, defendant

12  gives up the following rights:

13          a.   The right to persist in a plea of not guilty.

14          b.   The right to a speedy and public trial by jury.

15          c.   The right to be represented by counsel -- and if

16  necessary have the Court appoint counsel -- at trial.  Defendant

17  understands, however, that, defendant retains the right to be

18  represented by counsel -- and if necessary have the Court appoint

19  counsel -- at every other stage of the proceeding.

20          d.   The right to be presumed innocent and to have the

21  burden of proof placed on the government to prove defendant guilty

22  beyond a reasonable doubt.

23          e.   The right to confront and cross-examine witnesses

24  against defendant.

25          f.   The right to testify and to present evidence in

26  opposition to the charges, including the right to compel the

27  attendance of witnesses to testify.

28

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

17.   Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $11,366,281; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised

10

release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.   Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.   Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19.   This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

RESULT OF WITHDRAWAL OF GUILTY PLEA

20.   Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then the USAO will be relieved of all of its obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

21.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an

1  Assistant United States Attorney.

2  <u>BREACH OF AGREEMENT</u>

3      22.  Defendant agrees that if defendant, at any time after the

4  effective date of this agreement, knowingly violates or fails to

5  perform any of defendant's obligations under this agreement ("a

6  breach"), the USAO may declare this agreement breached.  All of

7  defendant's obligations are material, a single breach of this

8  agreement is sufficient for the USAO to declare a breach, and

9  defendant shall not be deemed to have cured a breach without the

10 express agreement of the USAO in writing.  If the USAO declares this

11 agreement breached, and the Court finds such a breach to have

12 occurred, then: (a) if defendant has previously entered a guilty plea

13 pursuant to this agreement, defendant will not be able to withdraw

14 the guilty plea, and (b) the USAO will be relieved of all its

15 obligations under this agreement.

16     <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>
17

18     23.  Defendant understands that the Court and the United States

19 Probation and Pretrial Services Office are not parties to this

20 agreement and need not accept any of the USAO's sentencing

21 recommendations or the parties' agreements to facts or sentencing

22 factors.

23     24.  Defendant understands that both defendant and the USAO are

24 free to: (a) supplement the facts by supplying relevant information

25 to the United States Probation and Pretrial Services Office and the

26 Court, (b) correct any and all factual misstatements relating to the

27 Court's Sentencing Guidelines calculations and determination of

28 sentence, and (c) argue on appeal and collateral review that the

Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

26.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

27.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED
UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_Steven M. Arkow_                    _April 27, 2023_
STEVEN M. ARKOW                      DATE
Assistant United States Attorney


_____                    _4/24/23_
YOSSI ENGEL                          DATE
Defendant

_JL Mangil_                          _04.24.2023_
JAN L. HANDZLIK                      DATE
Attorney for Defendant

14

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
YOSSI ENGEL                               Date    4/24/23
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am YOSSI ENGEL's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        04.24.2023
JAN L. HANDZLIK                         Date
Attorney for Defendant
YOSSI ENGEL

16

1

2

3

4                                  **EXHIBIT A**

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11          Plaintiff,                  I N F O R M A T I O N

12          v.                          [18 U.S.C. § 1343: Wire Fraud]

13   YOSSI ENGEL,

14          Defendant.

15

16       The United States Attorney charges:

17                        [18 U.S.C. § 1343]

18   A.   INTRODUCTORY ALLEGATIONS

19       At times relevant to this Information:

20       1.   Defendant YOSSI ENGEL was a resident of Los Angeles,

21   California.

22       2.   Defendant ENGEL founded and was the sole owner of iWitness

23   Tech, LLC ("iWitness"), a California limited liability company that

24   defendant ENGEL incorporated in 2018 and operated out of its place of

25   business in Los Angeles, California.  iWitness was in the business of

26   installing residential and commercial security systems and cameras.

27       3.   Individual No. 1 was a resident of Lakewood, New Jersey.

28   Defendant ENGEL directed Individual No. 1 to solicit from other

persons loans to and investments with defendant ENGEL and to serve as an intermediary between those persons and defendant ENGEL in connection with such loans and investments.

B.   THE SCHEME TO DEFRAUD

4.   Beginning no later than in or about September 2018, and continuing through at least in or about February 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant ENGEL, together with others known and unknown to the United States Attorney, knowingly and with the intent to defraud devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations and promises, and the concealment of material facts.

5.   The scheme to defraud operated, in substance, as follows:

a.   To meet prospective victims with Orthodox Jewish communities and engender their trust, defendant ENGEL cultivated a reputation within the Orthodox Jewish community as a trustworthy and charitable person based on his activities as a member of an Orthodox synagogue in Los Angeles.

b.   Relying on the reputation he cultivated, defendant ENGEL also sought introductions and referrals to other individuals in the Orthodox Jewish community from whom he would solicit loans and investments.

c.   Defendant ENGEL also solicited, and directed Individual No. 1 to solicit, members of Orthodox Jewish communities (primarily in Los Angeles and New Jersey) to lend funds to and invest funds with defendant ENGEL and defendant ENGEL's company iWitness.

1              d.    Defendant ENGEL made, and directed Individual No. 1 to

2    make, false and fraudulent representations and promises to victims to

3    induce them to lend and invest funds with defendant ENGEL and

4    defendant ENGEL's company iWitness, including through the following

5    two pitches:

6              (i)   Defendant Engel's Company iWitness:  Defendant

7    ENGEL falsely represented that he needed funds for defendant ENGEL's

8    iWitness business, purportedly to purchase security cameras and

9    equipment that defendant ENGEL would install for iWitness's

10   customers, and falsely promised that defendant ENGEL would repay the

11   victims from fees generated from installation jobs of defendant

12   ENGEL's iWitness's security business; and

13             (ii)  Defendant's Real Estate Development in Israel:

14   Defendant ENGEL falsely represented that he needed funds to purchase

15   property and apartment buildings in Israel to remodel and develop

16   additional housing units, and falsely promised victims that defendant

17   ENGEL would then sell and share the profits from those developments

18   with them.

19             e.    To induce victims to lend and invest money and to

20   provide his solicitations with a veneer of legitimacy, defendant

21   ENGEL:

22             i.    Often provided victims promissory notes signed by

23   defendant ENGEL and sometimes guaranteed by Individual No. 1 that

24   promised repayment of the loan principal typically within weeks to

25   six months plus interest of typically between 10 and 60 percent on an

26   annualized basis;

27             ii.   represented that the promissory notes were

28   secured by an "obligation to I-Witness" based on iWitness's

                                    3

installation jobs with customers, in some instances providing victims
with false and fraudulent iWitness invoices or invoice numbers
purporting to show iWitness' sales to customers;

          iii. provided victims with false contracts, pictures
of apartment plans and fabricated documents, such as property deeds
and land registry documents, purporting to show defendant ENGEL's
ownership of certain apartments; and

          iv.  in order to create the false impression and
create the appearance that defendant ENGEL had special connections
and influence with the mayor of Bnei Brak (a city near Tel Aviv,
Israel, with a high concentration of Orthodox Jewish residents) that
would enable defendant ENGEL to fast track the approval and the
permitting process to build additional housing units in apartment
buildings, defendant ENGEL provided victims a video showing defendant
ENGEL with the mayor, which defendant ENGEL falsely represented was a
meeting at which the mayor expressed support for defendant ENGEL's
projects.

      f.   Defendant ENGEL knew the representations and promises
he made and directed Individual No. 1 to make were false because
defendant ENGEL:

          i.   did not intend to, and did not, use the victims'
funds to conduct the business activities that defendant ENGEL claimed
he would use the funds for; and

          ii.  knew that iWitness had not and would not perform
the work documented in the invoices, which defendant ENGEL had
fabricated;

iii. did not own or develop the land reflected on the fabricated land registry and other documents he provided to the victims; and

iv.  had no special relationship with the Bnei Brak mayor.

g.   Instead, as defendant ENGEL knew, he had used the victims' funds for his own personal benefit and lifestyle expenditures, and to make purported repayments to other victims in order to lull those victims into believing that their loans/investments were achieving the promised return through iWitness's business activities and defendant ENGEL's Israeli real estate developments (rather than coming from new victims' funds) and dissuade those victims from complaining to law enforcement or seeking the immediate full return of their loan/investment.

h.   At the direction of defendant ENGEL, the victims, relying on defendant ENGEL's false and fraudulent representations and concealment of facts, sent funds, by interstate wire and check, to defendant ENGEL's personal accounts and iWitness business bank accounts defendant ENGEL controlled.

i.   To further and conceal the fraudulent scheme, when defendant ENGEL did not have funds to cover his obligations to the victims, defendant ENGEL urged victims to postpone repayment and roll over their prior loans and investments into new loans and investments.

6.   Through the fraudulent scheme described above, defendant ENGEL obtained more than approximately $25 million from victims, who suffered losses of at least approximately $11,366,281.

D.   <u>USE OF INTERSTATE WIRES</u>

7.   On or about December 29, 2020, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant ENGEL caused victim A.L. to wire $460,000 from A.L.'s personal bank account at U.S. Bank to an iWitness Community West Bank account ending in 2353 that defendant ENGEL controlled by means of wire communications in interstate commerce.


                                   E. MARTIN ESTRADA
                                   United States Attorney


                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   RANEE A. KATZENSTEIN
                                   Assistant United States Attorney
                                   Chief, Major Frauds Section

                                   KRISTEN A. WILLIAMS
                                   Assistant United States Attorney
                                   Deputy Chief, Major Frauds Section

                                   STEVEN M. ARKOW
                                   Assistant United States Attorney
                                   Major Frauds Section

EXHIBIT "B"

<u>STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT FOR</u>
<u>DEFENDANT YOSSI ENGEL</u>

Beginning no later than in or about September 2018, and continuing through at least in or about February 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant YOSSI ENGEL ("defendant ENGEL" or "defendant"), together with others, knowingly and with the intent to defraud devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from such victims by means of material false and fraudulent pretenses, representations and promises, and the concealment of material facts.

Defendant ENGEL was a resident of Los Angeles, California. Defendant ENGEL founded and was the sole owner of iWitness Tech, LLC ("iWitness"), a California limited liability company that defendant ENGEL incorporated in 2018 and operated out of its place of business in Los Angeles, California.  iWitness was in the business of installing residential and commercial security systems and cameras.

Individual No. 1 was a resident of Lakewood, New Jersey. Defendant ENGEL directed Individual No. 1 to solicit from other persons loans to and investments with defendant ENGEL and to serve as an intermediary between those persons and defendant ENGEL in connection with such loans and investments.

The scheme to defraud operated, in substance, as follows:

a.   To meet prospective victims with Orthodox Jewish communities and engender their trust, defendant ENGEL cultivated a reputation within the Orthodox Jewish community as a trustworthy and

17

1    charitable person based on his activities as a member of an Orthodox

2    synagogue in Los Angeles.

3              b.    Relying on the reputation he cultivated, defendant

4    ENGEL also sought introductions and referrals to other individuals in

5    the Orthodox Jewish community from whom he would solicit loans and

6    investments.

7              c.    Defendant ENGEL also solicited, and directed

8    Individual No. 1 to solicit, members of Orthodox Jewish communities

9    (primarily in Los Angeles and New Jersey) to lend funds to and invest

10   funds with defendant ENGEL and defendant ENGEL's company iWitness.

11             d.    Defendant ENGEL made, and directed Individual No. 1 to

12   make, false and fraudulent representations and promises to victims to

13   induce them to lend and invest funds with defendant ENGEL and

14   defendant ENGEL's company iWitness, including through the following

15   two pitches:

16             (i)   Defendant Engel's Company iWitness:  Defendant

17   ENGEL falsely represented that he needed funds for defendant ENGEL's

18   iWitness business, purportedly to purchase security cameras and

19   equipment that defendant ENGEL would install for iWitness's

20   customers, and falsely promised that defendant ENGEL would repay the

21   victims from fees generated from installation jobs of defendant

22   ENGEL's iWitness's security business; and

23             (ii)  Defendant's Real Estate Development in Israel:

24   Defendant ENGEL falsely represented that he needed funds to purchase

25   property and apartment buildings in Israel to remodel and develop

26   additional housing units, and falsely promised victims that defendant

27   ENGEL would then sell and share the profits from those developments

28   with them.

e.   To induce victims to lend and invest money and to provide his solicitations with a veneer of legitimacy, defendant ENGEL:

i.   Often provided victims promissory notes signed by defendant ENGEL and sometimes guaranteed by Individual No. 1 that promised repayment of the loan principal typically within weeks to six months plus interest of typically between 10 and 60 percent on an annualized basis;

ii.   represented that the promissory notes were secured by an "obligation to I-Witness" based on iWitness's installation jobs with customers, in some instances providing victims with false and fraudulent iWitness invoices or invoice numbers purporting to show iWitness' sales to customers;

iii. provided victims with false contracts, pictures of apartment plans and fabricated documents, such as property deeds and land registry documents, purporting to show defendant ENGEL's ownership of certain apartments; and

iv.   in order to create the false impression and create the appearance that defendant ENGEL had special connections and influence with the mayor of Bnei Brak (a city near Tel Aviv, Israel, with a high concentration of Orthodox Jewish residents) that would enable defendant ENGEL to fast track the approval and the permitting process to build additional housing units in apartment buildings, defendant ENGEL provided victims a video showing defendant ENGEL with the mayor, which defendant ENGEL falsely represented was a meeting at which the mayor expressed support for defendant ENGEL's projects.

//

1     f.    Defendant ENGEL knew the representations and promises

2   he made and directed Individual No. 1 to make were false because

3   defendant ENGEL:

4          i.    did not intend to, and did not, use the victims'

5   funds to conduct the business activities that defendant ENGEL claimed

6   he would use the funds for; and

7          ii.   knew that iWitness had not and would not perform

8   the work documented in the invoices, which defendant ENGEL had

9   fabricated;

10         iii. did not own or develop the land reflected on the

11  fabricated land registry and other documents he provided to the

12  victims; and

13         iv.   had no special relationship with the Bnei Brak

14  mayor.

15     g.    Instead, as defendant ENGEL knew, he had used the

16  victims' funds for his own personal benefit and lifestyle

17  expenditures, and to make purported repayments to other victims in

18  order to lull those victims into believing that their

19  loans/investments were achieving the promised return through

20  iWitness's business activities and defendant ENGEL's Israeli real

21  estate developments (rather than coming from new victims' funds) and

22  dissuade those victims from complaining to law enforcement or seeking

23  the immediate full return of their loan/investment.

24     h.    At the direction of defendant ENGEL, the victims,

25  relying on defendant ENGEL's false and fraudulent representations and

26  concealment of facts, sent funds, by interstate wire and check, to

27  defendant ENGEL's personal accounts and iWitness business bank

28  accounts defendant ENGEL controlled.

To further and conceal the fraudulent scheme, when defendant ENGEL did not have funds to cover his obligations to the victims, defendant ENGEL urged victims to postpone repayment and roll over their prior loans and investments into new loans and investments.

On or about December 29, 2020, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant ENGEL caused victim A.L. to wire $460,000 from A.L.'s personal bank account at U.S. Bank to an iWitness Community West Bank account ending in 2353 that defendant ENGEL controlled by means of wire communications in interstate commerce.

Through the fraudulent scheme described above, defendant ENGEL caused more than 10 victims to pay more than approximately $25 million, and suffer losses of at least approximately $3,500,000.

<u>CERTIFICATION OF DEFENDANT</u>

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement of facts") in its entirety.  I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is accurate and correct, and is sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 of the plea agreement.

_____                    _____
YOSSI ENGEL                                4/24/23
Defendant                                  Date

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2

    I am YOSSI ENGEL's attorney.  I have carefully and thoroughly

3

discussed every part of this statement of facts with my client and

4

agree that it is sufficient to support a plea of guilty to the charge

5

described in the plea agreement and to establish the Sentencing

6

Guidelines factors set forth in paragraph 12 of the plea agreement.

7

8

_____                _____

JAN L. HANDZLIK                          04.24.2023

Attorney for Defendant                   Date

9

YOSSIE ENGEL

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28